*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 12a0363p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

CAMILLE HADDAD,

               *Plaintiff-Appellant*,

    *v.*

ALEXANDER, ZELMANSKI, DANNER & FIORITTO, PLLC,

               *Defendant-Appellee.*

No. 11-1954

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:10-cv-11996—Bernard A. Friedman, District Judge.

Argued: May 29, 2012

Decided and Filed: October 22, 2012

Before: SILER and KETHLEDGE, Circuit Judges; GRAHAM, District Court Judge.[*]

_____

## COUNSEL

**ARGUED:** Daniel P. Feinberg, MEISNER & ASSOCIATES, P.C., Bingham Farms, Michigan, for Appellant. Mark B. Davis, ALEXANDER, ZELMANSKI, DANNER & FIORITTO, PLLC, Plymouth, Michigan, for Appellee. **ON BRIEF:** Daniel P. Feinberg, MEISNER & ASSOCIATES, P.C., Bingham Farms, Michigan, for Appellant. Mark B. Davis, ALEXANDER, ZELMANSKI, DANNER & FIORITTO, PLLC, Plymouth, Michigan, for Appellee.

---

[*]The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

1

---

**OPINION**

---

SILER, Circuit Judge.   The question presented by this appeal is whether an assessment owed to a condominium association qualifies as a "debt" under the Fair Debt Collection Practices Act  ("FDCPA"), 15 U.S.C. § 1692 *et seq*., and under the Michigan Collection Practices Act ("MCPA"), MICH. COMP. LAWS § 445.251 *et seq*., where the condominium owner bought the property for his personal use, resided there for fifteen years, and now leases the condominium.   We hold that it does.   The district court's contrary judgment is **REVERSED** and **REMANDED** for further proceedings.

I.

In 1992, Plaintiff Camille Haddad ("Haddad") purchased a condominium to use as his primary residence.   Upon procurement, Haddad became obligated to pay assessments to the condominium association, pursuant to the condominium's deed.   He timely paid the regular assessments and lived at the home until 2005, when he relocated. Since that time, the condominium has remained vacant or leased.   He listed the condominium as rental real estate on his taxes beginning in 2006.

In October 2008, Haddad received a collection letter from Defendant Alexander, Zelmanski, Danner & Fioritto, PLLC ("Firm"), on behalf of the condominium association.   The letter informed Haddad that he was in default on his obligation to pay fees due to the association as required by the condominium deed.   Interestingly, the letter itself refers repeatedly to the amount owed as a "debt" and refers specifically to the FDCPA.   The amount due, according to the letter, was $898.00, which included past-due assessments, late fees, interest and attorney's fees.   The letter stated that if the amount demanded was not paid within thirty days, the association would commence proceedings to file a lien against the condominium.

In December 2008, Haddad received a second notice from the Firm indicating that full payment of his outstanding debt should be sent within ten days.   Barring that,

the letter warned, the association would file a lien against the property pursuant to MICH. COMP. LAWS § 559.208. Haddad timely responded to both letters, and he requested verification of the debts allegedly owed. However, the Firm did not verify the debts and recorded a Notice of Lien in May 2009. The condominium association eventually corrected its records and the lien was discharged in February 2010.

Haddad filed an action under the FDCPA, 15 U.S.C. § 1692, and the MCPA, MICH. COMP. LAWS § 445.251, alleging that the Firm had failed to comply with these statutes' requirements. Haddad specifically alleged that the Firm had violated 15 U.S.C. §§ 1692g and 1692e. Those sections prohibit "us[ing] any false, deceptive, or misleading representation or means in the collection of any debt" (§1692e), and continuing "collection of [a disputed] debt . . . until the debt collector obtains verification of the debt" (§ 1692g). Each of these provisions requires an underlying "debt" incurred for personal rather than business purposes.

Haddad and the Firm filed cross-motions for summary judgment. The Firm argued that because Haddad was renting his property at the time when the firm began its collection efforts, the underlying debt cannot be considered "primarily for personal, family, or household purposes" as defined by the FDCPA. Haddad argued that condominium assessments qualify as consumer debts as defined by the FDCPA, such that the statutory violations he alleged against the Firm were valid. Haddad further alleged that the Firm failed to verify the debt it sought to collect and misrepresented that debt in violation of the named statutes in Haddad's complaint. The district court granted the Firm's motion, holding that the condominium assessments at issue were not encompassed by the statutory definition of "debt."

II.

We review a district court's grant of summary judgment *de novo*. *Bowling Green v. Martin Land Dev. Co., Inc.*, 561 F.3d 556, 558 (6th Cir. 2009).

A.

The FDCPA defines a "debt" in the following way:

> The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5). The Michigan statute defines "debt" in the same way. MICH. COMP. LAWS § 445.251(a); *Levant v. Am. Honda Fin. Corp*., 356 F. Supp. 2d 776, 784 (E.D. Mich. 2005). The issue in this appeal is whether the relevant time under the statute for determining whether a debt is for "personal, family, or household purposes" is at the instant of collection activities or at the instant the debt was incurred. The answer, in this case, determines whether the debt in question is debt regulated by the FDCPA and by the MCPA, and therefore whether Haddad has a cause of action.

This court has yet to conclude that the obligation to pay a condominium assessment constitutes a "debt" under the FDCPA. Courts which have considered this question confirm that the relevant point in time for determining the character of the obligation is when the loan is made, rather than when collection efforts begin. *See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.,* 214 F.3d 872, 874-75 (7th Cir. 2000); *Hunter v. Washington Mutual Bank*, No. 2:08-cv-069, 2012 U.S. Dist. LEXIS 26871, at *5 (E.D. Tenn., Mar. 1, 2012). The Seventh Circuit addressed the issue in *Newman v. Boehm, Pearlstein & Bright, Ltd.*, 119 F.3d 477 (7th Cir. 1997). The plaintiffs in *Newman* argued that, as condominium owners, their obligation to pay past-due assessments qualifies as a "debt" under the FDCPA because the obligation to pay arose from the purchase of the underlying property units. *Id*. at 479. Therefore, the "transaction" to which the FDCPA refers is the purchase of the home or condominium. The Seventh Circuit agreed with the plaintiffs, holding that by paying for and accepting title to their home, the owners "became bound by the Declaration of Covenants, Conditions, and Restrictions of their homeowners association, which required the payment of regular and special assessments imposed by the association." *Id*. at 481.

The obligation to pay the debts allegedly owed arose in connection with the purchase transaction.  Further, the Seventh Circuit suggests that the assessments themselves qualify as "personal, family, or household" purposes, to the extent that they are used for household and common-area improvements and maintenance, and "thereby directly benefit each household in the development."  *Id.* at 481-82; *see also Theis v. The Law Offices of William A. Wyman*, 969 F. Supp. 604, 608 (S.D. Cal. 1997) ("The FDCPA has no requirement that a service 'directly' benefit the consumer.").

We adopt the analysis of the Seventh Circuit in *Newman* and apply this analysis in reviewing the district court's decision.

## B.

Ignoring the underlying "transaction" at issue, the district court examined whether the assessed condominium fees are "debts" under the FDCPA and found that because the owner rented the condominium, rather than resided there, the fees therefore arose "from a primarily *business* use."  The Firm urges us to uphold the district court, arguing that the debt at issue cannot be considered "primarily for personal, family, or household purposes" because Haddad currently rents out his property.  In other words, the Firm argues that the relevant time for determining whether a debt is for personal, family, or household purposes is the time when the collection activities began.  Moreover, the Firm focuses on the actions taken by Haddad in the past several years as evidence that Haddad did not purchase the condominium property "primarily for personal, family, or household purposes," thereby disregarding Haddad's use of the condominium as his primary residence for fifteen years.

Haddad correctly asserts that his obligation to pay past-due assessments qualifies as a "debt" because the obligation arose from his original purchase transaction of the underlying property.  According to Haddad, the purchase of his home is the "transaction" to which section 1692a(5) refers even if the precise amount and timing of future assessments had not yet been determined.  By paying the purchase price and accepting title to his home, Haddad became obligated to pay any assessments pursuant to the condominium deed and the by-laws of the association, as well as under a Michigan

statute addressed to condominium property. MICH. COMP. LAWS § 445.251. It is therefore clear that the obligation to pay in this circumstance arose in connection with the purchase of the home itself, even if the timing and amount of particular assessments was yet to be determined. *Newman*, 119 F.3d at 481. Because the statute's definition of a "debt" focuses on the transaction creating the obligation to pay, the obligation to pay is derived from the purchase transaction itself. The assessments at issue in this case therefore qualify as "obligations of a consumer to pay money arising out of a transaction." 15 U.S.C. § 1629a(5).

Furthermore, cases cited by the district court in support of its reasoning are distinguishable from the case at hand, because the debt in those cases was clearly business debt. *See Van Eck v. BAL Global Fin., LLC*, No. 08-cv-13436, 2009 WL 3210092, at *1 (E.D. Mich. Sept. 30, 2009) (recognizing that debt from the purchase of materials for manufacturing industrial equipment is not consumer debt); *Schram v. Federated Fin. Corp.*, No. 06-12700, 2007 WL 1238863, at *1 (E.D. Mich. Apr. 27, 2007) (holding that the FDCPA did not apply because it was "undisputed" that the business credit card debt was a business debt); *Levant*, 356 F. Supp. 2d at 783 n.3 (holding that debt for car leased by and for a company was business debt). The same is true of cases cited by the Firm. *See First Gibraltar Bank v. Smith*, 62 F.3d 133 (5th Cir. 1995) (holding that debt entered into by a partnership to acquire and develop property is not debt under the FDCPA); *Kattula v. Jade*, No. 07-12569, 2008 WL 495298, at *1 (E.D. Mich. Feb. 20, 2008) (holding that debt entered into by a partnership to acquire and develop property is not debt under the FDCPA).

While debt collector conduct is certainly relevant when determining whether a violation of the FDCPA has occurred, it is not relevant when determining whether the debt in question is debt that is regulated by the FDCPA. The most probative time in determining the purposes that the individual has for purchasing a property is at the time of the transaction, not when an agency's collection efforts begin. *See Hunter*, No. 2:08-cv-069, 2012 WL 715270, at *2 (citing *Miller*, 214 F.3d at 874-75). Even though Haddad no longer resides at the property, the record is clear that he purchased the

condominium for personal usage and lived there for fifteen years. The district court erred in finding that the debt at issue does not meet the statutory definition of "debt" under the FDCPA or the MCPA because Haddad no longer derives a "personal" use from the condominium.

The district court decision is **REVERSED** and **REMANDED** for further proceedings in accordance with this opinion.